IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT TEXAS
DALLAS DIVISION

| | |
|---|---|
| Lisa Brown Sweeney, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELARA CARING PCS HOLDINGS, LLC d/b/a/ ELARA CARING<br><br>Defendant(s). | Case No.: 3:26-cv-1659<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Lisa Brown Sweeney ("Plaintiff") brings this Class Action Complaint against Defendant Elara Caring PCS Louisiana Holdings ("Defendant" or "Elara" or "Elara Caring") as an individual and on behalf of all others similarly situated, and allege, upon personal knowledge as to Plaintiff's own actions and to counsel's investigation, and upon information and belief as to all other matters, as follows:

**CASE SUMMARY**

1. Elara Caring provides comprehensive, personalized in-home healthcare services. Their offerings include skilled home health, hospice care, personal care services, behavioral health, palliative care, and virtual telehealth monitoring (via their *ElaraConnect* platform).[1] To obtain healthcare services and/or coverage from Defendant, patients, including Plaintiff and Class members, were required to provide sensitive and confidential information to Defendant, including

[1] https://elara.com/services/

but not limited to their names, dates of birth, Social Security numbers, health insurance information, treatment information, medical record number, and medical history information.

2. This case arises from a cybersecurity incident that took place on Defendant's network that purportedly occurred between November 4-6, 2025, and again between November 14-17, 2025 (the "Data Breach" or the "Data Incident")[2]. The Data Breach was discovered on December 12, 2025. As a result of the Data Breach, Plaintiff's private and sensitive personal information, which was entrusted to the Defendant on the basis of the mutual understanding that the Defendant would safeguard it against disclosure, was targeted, and compromised and unlawfully accessed by cybercriminals. The files accessed included but was not limited to the following information provided to the Defendant in its provision of medical services: names, Social Security numbers, dates of birth, driver's license and/or state identification numbers, information related to the course of medical treatment received, and other demographic information due to its inextricably close connection to individual's direct identifiers ("Private Information").

3. Plaintiff Lisa Brown Sweeney was a patient of Defendant prior to the Data Breach and thus contends she is a victim of the Data Breach. Defendant issued a Breach Notice to victims on or about November 21, 2025.

**PARTIES, JURISDICTION & VENUE**

4. Plaintiff Lisa Brown Sweeney is a resident citizen of Gans, Oklahoma. Gans is located within Sequoyah County Oklahoma.

5. Defendant, the Elara Caring PCS Louisiana Holdings, is a Texas limited liability company with its principal place of business located at 3010 Lyndon B. Johnson FWY Suite 1100,

[2] https://www.mass.gov/doc/2026-769-elara-caring/download

in Dallas, Texas 75234. The Defendant's Registered Agent for Service of Process is the CT Corporation System located at 1999 Bryan Street Suite 900 in Dallas, Texas 75201.

6. Defendant provides comprehensive, personalized in-home healthcare services. They operate in **1**8 states across the Northeast, Midwest, and Southwest regions of the United States, maintaining more than 200 local office locations.

7. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

8. This Court has personal jurisdiction over Defendant because Elara's headquarters and principal place of business is in this District and Defendant regularly conducts business in this District and has sufficient minimum contacts in this District.

9. Venue is proper under 28 U.S.C §1391(b) because the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## FACTUAL ALLEGATIONS

10. Defendant provides comprehensive, personalized in-home healthcare services; offerings include skilled home health, hospice care, personal care services, behavioral health, palliative care, and virtual telehealth monitoring (via their *ElaraConnect* platform). Defendant operates in 18 states across the country.

11. In order to become a patient of the Defendant, Plaintiff and Class Members were required to provide sensitive and confidential PII, including their names, dates of birth, Social

Security numbers, addresses, contact information, financial account information, health insurance information, and other sensitive information.

12. In its Privacy Practice, the Defendant acknowledges that they are "required by law to maintain the privacy of your health information and to provide to you and your representative this Notice of its duties and privacy practices. Agency will notify you following a breach of your unsecured PHI if such situation should arise.[3]"

13. Plaintiff and Class Members provided their PII to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

14. Defendant had a duty to adopt reasonable measures to protect the PII of the Plaintiff and Class Members from unauthorized disclosure to third parties.

15. Defendant had obligations created by FTC Act, contract, industry standards, and representations made to the Plaintiff and Class Members, to keep their PII confidential and to protect it from unauthorized access and disclosure.

16. Defendant derived substantial economic benefit from collecting Plaintiff's and Class Members' PII. Without the required submission of PII, Defendant could not perform the services they provided.

17. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' PII from disclosure.

18. Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and the Class Members from involuntary disclosure to third parties.

[3] https://elara.com/privacy-policy/

19. Despite recognizing its duty to do so, on information and belief, Defendant did not implement reasonable cybersecurity safeguards or policies to protect Plaintiff and the Class Members' PII.

***The Data Breach***

20. In December 2025, the Defendant became aware of a data breach that took place through a third-party vendor whereby it was discovered that patient files containing sensitive and private information were extracted from the network repository. The breach has occurred on two separate occasions. Firstly, between the dates of November 4-6, 2025. The second attempt has accrued between the dates of November 14-17, 2025. Subsequently in March 2026, the Defendant recognized that personal information had been compromised[4].

21. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's PII was a known risk to Defendant and thus, Defendant was on notice that failing to take steps necessary to secure the PII from those risks left the data in a perilous condition.

22. The Data Breach was a direct result of Defendant's failure to implement an information security program designed to: (a) to ensure the security and confidentiality of patient's information; (b) to protect against anticipated threats or hazards to the security or integrity of that information; and (c) to protect against unauthorized access to that information that could result in substantial harm or inconvenience to any patient.

23. An information security program encompasses the administrative, technical, or physical safeguards used to access, collect, distribute, process, protect, store, use, transmit, dispose of, or otherwise handle patient's information upon initial collection, during treatments and post

[4] https://www.mass.gov/doc/2026-769-elara-caring/download

treatments. Had Defendant implemented an information security program consistent with industry standards and best practices, it could have prevented the Data Breach.

24. As a result of the Data Breach, Plaintiff suffered an actual injury, similar to an intangible harm remedied at common law. Defendant's failure to implement an information security program resulted in the unauthorized disclosure of Plaintiff's and Class Members private information to cybercriminals. The unauthorized disclosure of Plaintiff's and Class Members PII constitutes an invasion of a legally protected privacy interest, that is traceable to the Defendant's failure to adequately secure the PII in its custody, and has resulted in actual, particularized, and concrete harm to the Plaintiff. The injuries Plaintiff suffered, as described herein, can be redressed by a favorable decision in this matter.

25. Defendant has not provided any assurances that: all data acquired in the Data Breach, or copies thereof, have been recovered or destroyed; or, that Defendant has modified its data protection policies, procedures, and practices sufficient to avoid future, similar, data breaches.

26. Defendant's conduct, as evidenced by the circumstances of the Data Breach, has created a substantial risk of future identity theft, fraud, or other forms of exploitation.

27. The imminent risk of future harm resulting from the Data Breach is traceable to the Defendant's failure to adequately secure the PII in its custody, and has created a separate, particularized, and concrete harm to the Plaintiff.

28. More specifically, the Plaintiff's exposure to the substantial risk of future exploitation caused him to: (i) lose time and effort spent responding to the Data Breach; and/or (ii) experience emotional distress associated with reviewing accounts for fraud, changing usernames and passwords or closing accounts to prevent fraud, and general anxiety over the consequences of

the Data Breach. The harm Plaintiff suffered can be redressed by a favorable decision in this matter.

29. As a result of the Data Breach, Plaintiff suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) statutory damages; (vi) nominal damages; and (vii) the continued and increased risk their PII will be further misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access on the dark web or otherwise; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the data.

30. Plaintiff Sweeney brings this class action lawsuit individually, and on behalf of all those similarly situated, to address Defendant's inadequate data protection practices and for failing to provide timely and adequate notice of the Data Breach.

***The Data Breach Was Avoidable***

31. Plaintiff incorporates all previous paragraphs as if asserted herein.

32. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's PII was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

33. Upon information and belief, the Data Breach was a direct result of Defendant's failure to: (i) identify risks and potential effects of collecting, maintaining, and sharing personal

information; (ii) adhere to its published privacy practices; (iii) implement reasonable data protection measures for the collection, use, disclosure, and storage of personal information; and/or (iv) ensure its third-party vendors were required to implement reasonable data protection measures consistent with Defendant's data protection obligations.

34. Upon information and belief, the Data Breach occurred because Defendant's information repositories were improperly secured, which permitted an unauthorized party to access Plaintiff's sensitive personal data.

35. To detect and prevent the Data Breach, Defendant could and should have implemented the following measures:

Reasonable Safeguards

a. Encrypt sensitive information that you send to third parties over public networks (like the internet) and encrypt sensitive information that is stored on your computer network, laptops, or portable storage devices used by your employees. Consider also encrypting email transmissions within your business.

b. Periodically review accounts and privileges for critical and sensitive information repositories. Ensure that repositories such as cloud-hosted databases are not unintentionally exposed to the public and permit only necessary and authorized hosts to access them.

c. Implement multifactor authentication.

d. Implement data retention policies to automate periodically archiving and/or deleting data that is no longer needed.

e. Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

f. Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

g. Develop and publish policies that define acceptable information to be stored in repositories.

h. Regularly patch critical vulnerabilities in operating systems, software, and firmware on devices. Consider using a centralized patch management system.

i. Check expert websites (such as www.us-cert.gov) and your software vendors' websites regularly for alerts about new vulnerabilities and implement policies for installing vendor-approved patches to correct problems.

j. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks. Depending on your circumstances, appropriate assessments may range from having a knowledgeable employee run off-the-shelf security software to having an independent professional conduct a full-scale security audit.

k. Scan computers on your network to identify and profile the operating system and open network services. If you find services that you don't need, disable them to prevent hacks or other potential security problems.

l. Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

m. Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email.

n. Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

o. Configure firewalls to block access to known malicious IP addresses.

p. Set anti-virus and anti-malware programs to conduct regular scans automatically.

q. Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

r. Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

s. Consider disabling Remote Desktop protocol (RDP) if it is not being used.

t. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

u. Execute operating system environments or specific programs in a virtualized environment.

v. Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

w. Conduct an annual penetration test and vulnerability assessment.

x. Secure your backups.[5]

y. Identify the computers or servers where sensitive personal information is stored.

---

[5] *How to Protect Your Networks from Ransomware*, at p.3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view

z. Identify all connections to the computers where you store sensitive information. These may include the internet, electronic cash registers, computers at your branch offices, computers used by service providers to support your network, digital copiers, and wireless devices like smartphones, tablets, or inventory scanners.

aa. Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business.

bb. Regularly run up-to-date anti-malware programs on individual computers and on servers on your network.

cc. Restrict employees' ability to download unauthorized software. Software downloaded to devices that connect to your network (computers, smartphones, and tablets) could be used to distribute malware.

dd. To detect network breaches when they occur, consider using an intrusion detection system.

ee. Create a "culture of security" by implementing a regular schedule of employee training. Update employees as you find out about new risks and vulnerabilities.

ff. Tell employees about your company policies regarding keeping information secure and confidential. Post reminders in areas where sensitive information is used or stored, as well as where employees congregate.

gg. Teach employees about the dangers of spear phishing—emails containing information that makes the emails look legitimate. These emails may appear to come from someone within your company, generally someone in a position of authority. Make it office policy to independently verify any emails requesting sensitive information.

hh. Before you outsource any of your business functions investigate the company's data security practices and compare their standards to yours.[6].

36. Without identifying the potential risks to the personal data in Defendant's possession, Defendant could not identify and implement the necessary measures to detect and prevent cyberattacks. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures, resulting in the Data Breach and the exposure of Plaintiff and the Class Members' PII.

37. Defendant knew and understood unencrypted PII is valuable and highly sought after by cybercriminals seeking to illegally monetize that data. At all relevant times, Defendant knew,

---

[6] *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business

or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if a data breach occurred, including the significant cost that would be imposed on Plaintiff and the Class Members as a result.

***Plaintiff Brown Sweeney's Experience***

38. Plaintiff Sweeney provided Defendant Elara Caring with her sensitive PII as a condition of obtaining healthcare services. After Plaintiff provided her PII, Defendant suffered a Data Breach.

39. Plaintiff is careful about sharing her sensitive Private Information. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

40. Had Plaintiff been aware that Defendant's computer systems were not secure, she would not have entrusted her personal data to Defendant.

41. Because of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent self-monitoring her accounts to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

42. Even with the best response, the harm caused to Plaintiff cannot be undone.

43. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach. Plaintiff suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and have anxiety and increased concerns for the loss of his privacy.

44. Plaintiff has suffered imminent and impending injury arising from the exacerbated risk of fraud, identity theft, and misuse resulting from their Private Information being placed in the hands of criminals.

45. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and Class Members Sustained Damages in the Data Breach***

46. Plaintiff incorporates all previous allegations as if asserted herein.

47. Plaintiff would not have allowed Defendant to maintain their sensitive information if they knew Defendant would not implement reasonable safeguards to protect the data from unauthorized access and disclosure.

48. The invasion of the Plaintiff and Class Members' privacy suffered in this Data Breach constitutes an actual, particularized, redressable injury traceable to the Defendant's conduct. As a consequence of the Data Breach, Plaintiff and Class Members sustained monetary damages that exceed the sum or value of $5,000,000.00.

49. Additionally, Plaintiff and Class Members face a substantial risk of future identity theft, fraud, or other exploitation where their names, social security numbers, and dates of birth were targeted by a sophisticated hacker known for stealing and reselling sensitive data on the dark web. The substantial risk of future identity theft and fraud created by the Data Breach constitutes a redressable injury traceable to the Defendants' conduct.

50. Furthermore, Plaintiff and Class Members face a substantial risk of future spam, phishing, or other attacks designed to trick them into sharing sensitive data, downloading malware, or otherwise exposing themselves to cybercrime, where their names and contact information were likely acquired in the Data Breach and potentially released on the dark web. The substantial risk of future exploitation created by the Data Breach constitutes a redressable injury traceable to the Defendant's conduct.

51. Upon information and belief, a criminal can easily link data acquired in the Data Breach with information available from other sources to commit a variety of fraud related crimes. An example of criminals piecing together bits and pieces of data is the development of "Fullz" packages.[7] With "Fullz" packages, cyber-criminals can combine multiple sources of PII to apply for credit cards, loans, assume identities, or take over accounts.

52. Given the type of targeted attack in this case, the sophistication of the criminal responsible for the Data Breach, the type of PII involved in the Data Breach, hacker behaviors in prior data breaches, the ability of criminals to link data acquired in the Data Breach with information available from other sources, and the fact that the stolen information has been placed, or will be placed, on the dark web, it is reasonable for Plaintiff and the Class Members to assume that their PII was obtained by, or released to, criminals intending to utilize the PII for future identity theft-related crimes or exploitation attempts.

53. The substantial risk of future identity theft, fraud, or other exploitation that Plaintiff and Class Members face is sufficiently concrete, particularized, and imminent that it necessitates

---

[7] "Fullz" is term used by cybercriminals to describe "a package of all the personal and financial records that thieves would need to fraudulently open up new lines of credit in a person's name." A Fullz package typically includes the victim's name, address, credit card information, social security number, date of birth, bank name, routing number, bank account numbers and more. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm

the present expenditure of funds to mitigate the risk. Consequently, Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to understand and mitigate the effects of the Data Breach.

54. For example, the Federal Trade Commission has recommended steps that data breach victims take to protect themselves and their children after a data breach, including: (i) contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity); (ii) regularly obtaining and reviewing their credit reports; (iii) removing fraudulent charges from their accounts; (iv) closing new accounts opened in their name; (v) placing a credit freeze on their credit; (vi) replacing government-issued identification; (vii) reporting misused Social Security numbers; (viii) contacting utilities to ensure no one obtained cable, electric, water, or other similar services in their name; and (ix) correcting their credit reports.[8]

55. As a consequence of the Data Breach, Plaintiff and Class Members sustained or will incur monetary damages to mitigate the effects of an imminent risk of future injury. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year. The cost of dark web scanning and monitoring services can cost around $180 per year.

56. As a result of the Data Breach, Plaintiff and Class Members' PII, which has an inherent market value in both legitimate and illegitimate markets, has been damaged and diminished by its unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

---

[8] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps

57. Personal information is of great value, in 2019, the data brokering industry was worth roughly $200 billion.[9] Data such as name, address, phone number, and credit history has been sold at prices ranging from $40 to $200 per record.[10] Sensitive PII can sell for as much as $363 per record.[11]

58. Furthermore, as a condition of obtaining medical services through the Defendant, Plaintiff and Class Members were required to give their sensitive and confidential PII to Defendant.

59. Defendant retains and stores this information and derive a substantial economic benefit from the PII that it collects.

60. But for the collection of Plaintiff' and Class Members' PII, Defendant would not be able to perform their services.

61. By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that they were responsible for protecting the PII from disclosure.

62. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

---

[9] *Column: Shadowy data brokers make the most of their invisibility cloak*, https://www.latimes.com/business/story/2019-11-05/column-data-brokers

[10] *In the Dark*, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/

[11] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

63. However, Defendant failed to prevent this Data Breach by failing to properly secure and encrypt the files and file servers containing the PII of Plaintiff and Class Members.

64. Accordingly, through this Complaint, Plaintiff seeks redress individually, and on behalf of all similarly situated individuals, for the damages that resulted from the Data Breach.

## CLASS ALLEGATIONS

65. Plaintiff incorporates all previous allegations as assertd herein.

66. Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

67. The Class that Plaintiff seeks to represent is defined as follows:

> **Nationwide Class:** All individuals residing in the United States whose PII was accessed and acquired by an unauthorized party as a result of a Data Breach (the "Class" or "Class Members").

68. Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

69. Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

70. Numerosity: The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendant.

71. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, includes the following:

a. Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;
b. Whether Defendant had a duty not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;
c. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;
d. Whether Defendant required its third-party vendors to adequately safeguard the PII of Plaintiff and Class Members;
e. When Defendant actually learned of the Data Breach;
f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;
g. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;
h. Whether Defendant adequately addressed and fixed the practices, procedures, or vulnerabilities which permitted the Data Breach to occur;
i. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;
j. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

72. Typicality: Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

73. Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect

to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Sweeney.

74. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights, and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

75. Superiority and Manageability: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

76. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited

resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

77. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

78. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

79. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

80. Further, Defendant's actions apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

81. Likewise, the following issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

a. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, sharing, storing, and safeguarding their PII;

b. Whether Defendant's (or their vendors') security measures were reasonable in light of industry best practices;

c. Whether Defendant's (or their vendors') failure to institute adequate data protection measures amounted to negligence;

d. Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII;

e. Whether Defendant made false representations about their data privacy practices and commitment to the security and confidentiality of patient information; and

f. Whether adherence to FTC recommendations and best practices for protecting personal information would have reasonably prevented the Data Breach.

## <u>CAUSES OF ACTION</u>

### COUNT 1: NEGLIGENCE

82. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

83. Defendant requires its patients to submit PII in the ordinary course of providing products or services.

84. Defendant gathered and stored the PII of Plaintiff and Class Members as part of its business. Plaintiff and Class Members entrusted Defendants with their PII with the understanding that Defendants would adequately safeguard their information.

85. Defendant had full knowledge of the types of PII it collected and the types of harm that Plaintiff and Class Members would suffer if that data was accessed and exfiltrated by an unauthorized third-party.

86. By collecting, storing, sharing, and using the Plaintiff's and Class Members' PII for commercial gain, Defendant assumed a duty to use reasonable means to safeguard the personal data it obtained.

87. Defendant has a duty to develop, implement, and maintain a written information security program designed to protect sensitive information. The information security program

must be appropriate to the size and complexity of the business, the nature and scope of business activities, and the sensitivity of the information at issue.

88. Defendant's duty included a responsibility to ensure it: (i) implemented reasonable administrative, technical, and physical measures to detect and prevent unauthorized intrusions into its information technology and/or cloud environments; (ii) contractually obligated its vendors to implement appropriate administrative, technical, and physical measures to protect and secure the information systems and nonpublic information that are accessible to, or held by, the vendor; (iii) complied with applicable statutes and data protection obligations; (iv) conducted regular privacy assessments and security audits of Defendant's and/or its vendors' data processing activities; (v) regularly audited for compliance with contractual and other applicable data protection obligations; and, (vi) provided timely notice to individuals impacted by a data breach event.

89. Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII that Defendant were no longer required to retain.

90. Defendant had a duty to notify Plaintiff and the Class of the Data Breach promptly and adequately. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any fraudulent usage of their PII.

91. Defendant violated its common law duty and other consumer protection statutes by failing to implement an information security plan or use reasonable security measures to protect PII. Defendant's violations constitute negligence and/or wantonness.

92. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII. The specific acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to designate a qualified individual to implement and supervise its information security program.

b. Failing to conduct an assessment to determine foreseeable risks and threats – internal and external – to the confidentiality and integrity of information.

c. Failing to design and implement safeguards to control the risks identified through the risk assessment.

d. Failing to encrypt personally identifying information in transit and at rest.

e. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII.

f. Failing to adequately monitor the security of their networks and systems.

g. Allowing unauthorized access to PII.

h. Failing to detect in a timely manner that PII had been compromised.

i. Failing to remove former employees' PII it was no longer required to retain.

j. Failing to implement data security practices consistent with Defendants' published privacy policies.

93. The injuries to Plaintiff and the Class because of Defendant's failure to use adequate security measures were reasonably foreseeable under the circumstances.

94. Plaintiff was the foreseeable victim of a data breach. Defendant knew or should have known of the inherent risks in collecting and storing PII, the critical importance of protecting that PII, and the necessity of updating, patching, or fixing critical vulnerabilities in its network.

95. Plaintiff and the Class had no ability to protect the PII maintained by the Defendant. Defendant was in the exclusive and optimal position to prevent harms suffered by Plaintiff and the Class as a result of the Data Breach.

96. But for Defendant's breach of duties owed to Plaintiff and the Class, their PII would not have been compromised and accessed by unauthorized individuals. There is a linear relationship between Defendant's failure to implement reasonable security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class as a direct result of the Data Breach.

97. As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PII.

98. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

99. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to: (i) strengthen its data protection procedures; (ii) patch all critical vulnerabilities; and (iii) to provide adequate credit monitoring to all affected by the Data Breach.

**COUNT 2: BREACH OF IMPLIED CONTRACT**

100. Plaintiff re-alleges and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

101. When Plaintiff and Class Members provided their Private Information to Elara Caring as a condition of procuring services, they entered into implied contracts with Elara Caring under which Elara Caring agreed to reasonably protect such information by using reasonable technical, administrative, and physical safeguards to protect against unauthorized access to, use of, or disclosure of the personal information it collects and stores.

102. Plaintiff and Class Members would not have entrusted their PII to the Defendant in the absence of an implied promise to implement reasonable data protection measures.

103. Defendants breached the implied contract with Plaintiff and Class Members which arose from the course of conduct between the parties, as well as disclosures on the Defendant's web site, privacy policy, and in other documents, all of which created a reasonable expectation that the personal information Defendant collected would be adequately protected and that the Defendant would take such actions as were necessary to prevent unauthorized access to, use of, or disclosure of such information.

104. As a direct and proximate result of the Defendant's breach of an implied contract, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PII.

105. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to: (i) strengthen its data protection procedures; (ii) patch all critical vulnerabilities; and (iii) to provide adequate credit monitoring to all affected by the Data Breach.

**COUNT 3: UNJUST ENRICHMENT**

106. Plaintiff re-alleges and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

107. Plaintiff brings this Count in the alternative to the breach of implied contract count above.

108. Plaintiff and Class Members conferred a monetary benefit on Defendant. In creating a patient/provider relationship with Elara, they provided Defendant with their Private Information.

109. Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

110. Defendant enriched themselves by saving the costs Defendant reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Rather than providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by using cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize its own profits over the requisite security.

111. Defendant failed to secure Plaintiff's and Class Members' Private Information and yet retains the full measure of funds paid by or on behalf of the Plaintiff and Class Members.

112. Defendant acquired the Private Information through inequitable means in that they failed to disclose the inadequate security practices alleged.

113. If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

114. Plaintiff and Class Members have no adequate remedy at law available to them.

115. As a direct and proximate result of the Defendants' conduct, Plaintiff and Class Members suffered injuries including, but not limited to: (i) actual identity theft; (ii) monetary damages; (iii) lost time attempting to mitigate the actual consequences of the Data Breach; (iv) lost benefit of the bargain; (v) statutory damages; (vi) nominal damages; (vii) emotional distress; and (viii) the continued and increased risk their data will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PHI.

116. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

117. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

**COUNT 4: INVASION OF PRIVACY**

118. Plaintiff re-alleges and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

119. Plaintiff and Class Members had a legitimate expectation of privacy in their personally identifying information such as their Social Security numbers, dates of birth, and health information. Plaintiff and Class Members were entitled to the protection of this information from disclosure to unauthorized third parties.

120. Defendant owed a duty to Plaintiff and Class Members to keep their PII secure and confidential.

121. Defendant permitted the public disclosure of Plaintiff and Class Members' PII to unauthorized third parties.

122. The PII that was disclosed without the proper authorization was highly sensitive, private, and confidential. The public disclosure of the type of PII at issue here would be highly offensive to a reasonable person of ordinary sensibilities.

123. Defendant allowed predictable security flaws to persist in its systems. By neglecting to patch predictable security vulnerabilities within its network the Defendant has effectively left the system holding confidential patient's data exposed and facilitated subsequent data breach.

124. By permitting the unauthorized disclosure, Defendant acted with reckless disregard for the Plaintiff's and Class Members' privacy, and with knowledge that such disclosure would be highly offensive to a reasonable person. Furthermore, the disclosure of the PII at issue was not newsworthy or of any service to the public interest.

125. Defendant was aware of the potential of a data breach and failed to adequately safeguard its systems and/or implement appropriate policies and procedures to prevent the unauthorized disclosure.

126. Defendant acted with such reckless disregard as to the safety of Plaintiff and Class Members' PII to rise to the level of intentionally allowing the intrusion upon the seclusion, private affairs, or concerns of Plaintiff and Class Members.

127. Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined by the Honorable Court at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Class

alleged herein, respectfully requests that the Court enter judgment as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff(s) as the representatives for the Class and counsel for Plaintiff(s) as Class Counsel;

B. For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. Ordering Defendant to pay for lifetime credit monitoring and dark web scanning services for Plaintiff and the Class;

E. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F. For prejudgment interest on all amounts awarded;

G. For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendants' conduct;

H. For injunctive relief as pleaded or as the Court may deem proper; and

I. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

DATED: May 21, 2026

Respectfully Submitted,

*/s/Leigh S. Montgomery*

Leigh S. Montgomery Texas Bar No. 24052214
ELLZEY KHERKHER SANFORD
MONTGOMERY, LLP
5621 S. Arch Bridge Ct (local)
Arlington, TX 76017
4200 Montrose Blvd,
Suite 200
Houston, Texas 77006
Phone: (888) 350-3931

-AND-

Andre R. Belanger (pro hac forthcoming)
POULIN | WILLEY | ANASTOPOULO
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: andre.belanger@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*